# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MARIO CHANDLER,                                    Case No. 1:12-cv-078
      Petitioner,

                                      Dlott, J.

      vs.                                          Bowman, M.J.

WARDEN, LEBANON                                    **REPORT AND**
CORRECTIONAL INSTITUTION,                          **RECOMMENDATION**
      Respondent.

Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.   This matter is before the Court on the petition, respondent's return of writ, and petitioner's reply.   (Docs. 2, 6, 16).

## I.  FACTUAL BACKGROUND

The Ohio Court of Appeals, First Appellate District, provided the following summary of the facts that led to petitioner's conviction and sentence:[1]

> Evidence presented at a jury trial showed that Cassandra Walker was working as a cashier at the West End Food Mart, a small neighborhood grocery store. She was making a cash drop into the safe when an individual walked into the store with a gun in hand.   He had a tee shirt wrapped around his head so that only his mouth, his eyes, and his nose were visible.
>
> The robber waved the gun around and ordered everyone to go to the back of the store. Most of the people in the store complied.   But Renay Jackson, another employee who happened to be in the store on her day off, stayed with Walker and refused to leave. Both Walker and Jackson had an opportunity to get a good look at the robber.
>
> Walker was known to customers of the store as "Auntie." The robber told her, "Auntie, I am not going to kill you.   I'm not even going to hurt you.   Just give me the

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."   Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct.   *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

money."   Walker opened the cash register and gave the robber a stack of bills.   The robber grabbed the money, ran out the door, and continued to run up the street. Walker called the police and described the robber as a "white male."

The Sunday after the robbery, Chandler, who is black, came into the store.   Walker did not know his name, but she recognized him as a regular customer.   He came in daily and would buy Cigarellos and, sometimes, a drink.   During these visits, Walker talked to Chandler extensively.

When Chandler spoke to Walker, he addressed her as "Auntie," just as the robber had. Both Jackson and Walker recognized Chandler, particularly his voice, from the robbery and became frightened.   Walker left the cash register, went to the walk-in cooler, and called the store owner.   After regaining her composure, Walker returned to the cash register and sold Chandler his Cigarillos.   She also wrote down the license-plate number for the car in which Chandler was a passenger.

Detective Anthony Brucato used the license-plate number to trace the car to Chandler's girlfriend, who gave him Chandler's name.   Brucato then prepared a photographic lineup.   He showed it to Walker and Jackson separately, and both identified Chandler as the robber.

(Doc. 6, Ex. 1, pp. 1-2).

## II.    PROCEDURAL HISTORY

### State Trial Proceedings and Appeal

On June 12, 2009, the Hamilton County, Ohio, grand jury returned a two count indictment charging petitioner with Aggravated Robbery, in violation of Ohio Rev. Code § 2911.01(A)(1), and Robbery, in violation of Ohio Rev. Code § 2911.02 (A)(2).   (Doc. 6, Ex. 2).   On June 24, 2010, following a jury trial, petitioner was found guilty of Aggravated Robbery and Robbery.   (*See* Doc. 6, Ex. 3).   On July 13, 2010, petitioner received total aggregate sentence of seven years imprisonment in the department of corrections.   (Doc. 6, Ex. 4).

On July 7, 2010, through counsel, petitioner filed a notice of appeal in the Ohio Court of Appeals.   (Doc. 6, Ex. 6).   In his appellate brief, petitioner raised the following seven assignments of error:

2

1. The jury erred to the prejudice of the Defendant-Appellant by finding him guilty of aggravated robbery and robbery, as those findings were not supported by sufficient evidence.

2. The jury erred to the prejudice of the Defendant-Appellant by finding him guilty of aggravated robbery and robbery, as those findings were contrary to law.

3. The trial court erred to the prejudice of the Defendant-Appellant by overruling his Motion for Acquittal under Ohio Criminal Procedure Rule 29.

4. The trial court erred to the prejudice of the Defendant-Appellant by imposing a sentence that is an abuse of discretion.

5. Defendant-Appellant was prejudiced by the state's misconduct.

6. The trial court erred to the prejudice of the Defendant-Appellant by not granting his motion to set aside the jury verdict.

7. The trial court erred to the prejudice of the Defendant-Appellant by not granting his motion to suppress the identification evidence.

(Doc. 6, Ex. 7). On June 8, 2011, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the judgment of the trial court. (Doc. 6, Ex. 1).

Petitioner filed a pro se notice of appeal to the Ohio Supreme Court on June 22, 2011. (Doc. 6, Ex. 10). In his memorandum in support of jurisdiction petitioner raised the same claims presented to the Ohio Court of Appeals on direct appeal. (*See* Doc. 6, Ex. 7, 10). On October 5, 2011 the Ohio Supreme Court denied leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (Doc. 6, Ex. 11).

## Federal Habeas Corpus

Petitioner filed the instant federal habeas petition on January 19, 2012. (Doc. 2). In the petition, petitioner raises the following seven grounds for relief:

**GROUND ONE:** The jury found Mr. Chandler guilty of aggravated robbery and robbery despite there was no evidence that linked me to the crime. The eyewitnesses were not credible in the "911" call they identified the robber as a Caucasian male,

while Mr. Chandler is African-American.  The key witness originally thought the robber was a white vagrant.  The robber held the gun in his left hand, while Mr. Chandler is right handed.   I also presented evidence that Mr. Chandler had an alibi the entire day of the robbery.

**GROUND TWO:**  The jury clearly "lost its way" in concluding that Mr. Chandler was guilty of aggravated robbery and robbery.   If this court reviews the entire record, including the transcripts of the trial and weighs all the evidence, there will only be one conclusion.   The jury clearly "lost its way."

**GROUND THREE:**  The state failed in proving that Defendant-Appellant was guilty of Aggravate[d] Robbery and Robbery.   I don't believe the state proved its case beyond a reasonable doubt.   The evidence presented in this case was so slight it was insufficient to support the jury's decision.

**GROUND FOUR:**  The trial court sentenced Mr. Chandler to 7 years despite my lack of criminal history, the evidence didn't support the conviction the sentence was excessive.

**GROUND FIVE:**  The prosecutor made improper remarks, it is improper for a prosecutor to express her personal belief or opinion as to the credibility of a witness or to state that a witness or the defendant is a liar.

**GROUND SIX:**  There was evidence of juror and witness misconduct.  Two witnesses testified that they witnessed a juror having a conversation not just with a third party, but with investigating detective Brucato.

**GROUND SEVEN**:   The identification of each witness was unreliable: The robber's face was partially covered; there were inconsistencies in the witnesses testimony.  Such as what part of the face was covered.  Ms. Walker seemed to base her identification on a voice both witnesses attention was questionable because of their heightened state of excitement.

(Doc. 6).

On July 23, 2012, through counsel, petitioner requested that the Court hold his petition in abeyance pending the outcome of his motion for a new trial, which was filed in Hamilton County Court of Common Pleas on July 10, 2012.   (Doc. 9, p. 2).   On January 9, 2013, the undersigned issued a Show Cause Order directing petitioner to show cause why his motion to hold his petition in abeyance should not be denied as moot in light of the Hamilton County Court of Common Pleas'

4

December 10, 2012 denial of his motion for a new trial.   (Doc. 10).   In response, counsel for

petitioner indicated that petitioner has elected not to pursue the issues presented in the motion for a

new trial in this habeas corpus proceeding and, therefore, his motion to hold his petition in abeyance

was moot.   (Doc. 11).   On February 27, 2013, the Court denied the motion as moot.   (Doc. 14).

Respondent has filed a return of writ arguing that the petition should be denied.   (Doc. 12).

Respondent contends that petitioner's grounds for relief are either not cognizable in federal habeas

corpus or without merit.

### III.    THE PETITION SHOULD BE DENIED.

In this federal habeas case, the applicable standard of review governing the adjudication of the

constitutional claims that were raised to and decided by the Ohio courts is set forth in 28 U.S.C. §

2254(d).   Under that provision, a writ of habeas corpus may not issue with respect to any claim

adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application
> of, clearly established federal law, as determined by the United States Supreme Court;
> or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts
> in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a

conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court

decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."

*Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13

(2000)), *cert. denied*, 132 S.Ct. 1743 (2012).   "A state court's adjudication only results in an

'unreasonable application' of clearly established federal law when 'the state court identifies the

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600.  As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* ___ U.S. ___, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court).  It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . .  This is a "substantially higher threshold.". . .  To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* ___ U.S. ___, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original).  The Supreme Court recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d).  *See Johnson v. Williams*, ___ U.S. ___, 133 S.Ct. 1088, 1092 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents."  *Harrington*, 131 S.Ct. at 786.  In

6

other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38, 44-45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision").   In *Greene*, 132 U.S. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. ___, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits.   We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at ___, 131 S.Ct. at 1398.   The reasoning of *Cullen* determines the result here.   As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'*"   *Id.*, at ___, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011))   The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court

decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

### A. Grounds One and Three are without merit.

In Grounds One and Three, petitioner contends that his convictions were not supported by sufficient evidence, in violation of the Fifth and Fourteenth Amendments.   (Doc. 2, pp. 5, 8; Doc. 16, pp. 8-12).

The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the merits of petitioner's assignment of error challenging the sufficiency of the evidence.   The state appellate court rejected petitioner's claim as follows:

> In his first assignment of error, Chandler contends that the evidence was insufficient to support his conviction.  In his third assignment of error, he contends that the trial court erred in overruling his Crim. R. 29 motion for judgment of acquittal, which is the same as a claim that the evidence was insufficient to support his conviction.   These assignments of error are not well taken.
>
> Our review of the record shows that a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that the state had proved beyond a reasonable doubt all the elements of aggravated robbery under R.C. 2911.01(A)(1).   Therefore, the evidence was sufficient to support the convictions.
>
> Chandler argues that the testimony of the state's witnesses was inconsistent and not credible, but matters as to the credibility of evidence are for the trier of fact to decide. He also argues that no physical evidence connected him to the crime.   But no rule of law exists that a witness's testimony must be corroborated by physical evidence. Consequently, we overrule Chandler's first and third assignments of error.

(Doc. 6, Ex. 1, pp. 2-3) (footnotes omitted).

Although the Ohio Court of Appeals only cited Ohio Supreme Court decisions in overruling petitioner's assignments of error, the state appellate court correctly identified the applicable standard of review established by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979), as governing the resolution of the constitutional issue.   As the state appellate court apparently understood, because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to

constitute the charged offense, *In Re Winship,* 397 U.S. 358, 363-64 (1970), "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

The State is not required under the Due Process Clause to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir. 1983). It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury. *See id.* at 318-19 & n.13; *see also United States v. Fisher,* 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009)); *York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v. Metrish,* 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000)); *see also Fisher,* 648 F.3d at 450. Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a reasonable *speculation* that the petitioner is guilty of the charged crime. *Newman,* 543 F.3d at 796-97 (and Sixth Circuit cases cited therein).

9

Furthermore, as discussed above, federal habeas review of a claim challenging the sufficiency of the evidence is even further limited. As the Sixth Circuit explained in *Brown*, 567 F.3d at 205, the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would." The federal habeas court must defer not only to the trier of fact's findings as required by *Jackson*, but under 28 U.S.C. § 2254(d), must also "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original); *see also Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011), *cert. denied,* 132 S.Ct. 1927 (2012); *Anderson v. Trombley*, 451 F. App'x 469, 474-75 (6th Cir. 2011), *cert. denied*, 132 S.Ct. 1152 (2012). Therefore, as the Sixth Circuit went on to emphasize in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt. We cannot even inquire whether *any* rational trier of fact would conclude that petitioner . . . is guilty of the offenses for which he was charged. Instead, we must determine whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

*Brown,* 567 F.3d at 205 (emphasis in original).

Applying the double-layer deferential standard to the case-at-hand, the undersigned concludes that the Ohio Court of Appeals' sufficiency determination is neither contrary to nor an unreasonable application of *Jackson*. As the Ohio Court of Appeals reasonably determined, the prosecution offered sufficient evidence to support petitioner's convictions.

The prosecution first offered the testimony of Ms. Cassandra Walker, an employee of the West End Food Mart. Walker testified that on May 26, 2009, an individual entered the store with a gun and stated "I'm going to rob you. I'm going to rob you." (Doc. 6, Transcript p. 198). Walker stated that the robber pointed the gun at her son's head, before instructing her son and others present to go to the back of the store. *Id.* at 199-201. At some point during the robbery, Walker attempted

to call 911, but the robber saw her.  *Id.* at 201.   She testified that the robber referred to her as

"Auntie" and said "I am not going to kill you.   He said, I am not even going to hurt you.   He said,

just give me the money."   *Id.* at 201-202.   Walker testified that she took the money out of the

register, put the money on the counter and tried to walk away, but that the robber grabbed her hand

before taking the money and leaving the store.   *Id.* at 202.   Walker then called 911 to report the

robbery.   *Id.* at 210-15.   Although Walker described the robber as a white male during the 911 call,

she testified that she initially thought the robber was "a dirty white bum," noting that petitioner has a

light complexion.   *Id.* at 209, 215, 218.

Walker testified that she was roughly four feet from the robber during the incident and

described him as wearing black pants and a black shirt, with a shirt wrapped around his face.   *Id.* at

199, 202-204.   She indicated that she was able to view the robber's face from his forehead down to

the bridge of his nose and from his lower lip to his chin.   *Id.* at 203.   Walker further testified that

although she did not know the robber's name, she knew that he was a regular customer and that she

had talked to him every day for months prior to the robbery.[2]   *Id.* at 205-206, 209, 218.   According

to Walker, the robber came back into the store the following Sunday, again referring to her as

"Auntie."   *Id.* at 217.   She testified that upon hearing his voice, she knew it was the same individual

who robbed the store, indicating that she felt as though she was having an anxiety attack.[3]   *Id.* at

216-17.   Walker took down his license plate number after he left the store.   *Id.* at 217-18.

---

[2]  Walker testified as follows:  "I knew his face.  I knew his eyes.  I just didn't know a name.  I couldn't - - I am not
from downtown, so it's just like - - and I even told the police he is not - - I know him.  I know the person that robbed me.
It wasn't just somebody who just happened to be in the neighborhood.  I know this person.  I just don't know no names."
*Id.* at 218.

[3]  Walker testified that she had no doubt that the individual was the person who robbed the store.  When asked what about
the person led her to this belief, she testified as follows: "His tone.  I knew the voice.  I knew the - - I knew the voice.
But now I see him I am putting a face to the voice.  I am telling you, it's like I almost had an anxiety attack.  I knew.  I
knew.  I knew.  There was no doubt.  No doubt.  No doubt.  I knew."  *Id.* at 217.

11

Renay Jackson, a West End Food Mart employee present on the day of the robbery, also testified.   Similar to Walker, Jackson testified that the robber was wearing shorts with a t-shirt concealing portions of his face.   *Id.* at 237.   She testified that she could see the robber's eyebrows, eyes and nose.   *Id.*   Jackson also testified that the same individual came back into the store the following Sunday, indicating that she nodded to Walker after noticing it was the same individual. *Id.* at 242-43.

Detective Brucato indicated that the license plate number provided by Walker eventually led him to petitioner.   *Id.* at 254-56.   Brucato testified that he presented Walker and Jackson with a photo-line-up including petitioner's picture.   He testified that both witnesses identified petitioner as the individual who had robbed the store.   Brucato stated that Jackson identified petitioner "immediately" and indicated that she was 100% sure he was the robber.   *Id.* at 260-61.   He further testified that Walker indicated she was definitely sure it was him.   *Id.* at 262.   Both Jackson and Walker identified petitioner in court and indicated they were 100% sure he was the individual who robbed the store.   *Id.* at 208, 225, 242, 244.

After a review of the entire record, viewing all of the evidence in the light most favorable to the prosecution, the undersigned finds that the evidence offered was constitutionally sufficient to sustain petitioner's convictions.   Although petitioner contends that he is entitled to habeas relief based on inconsistencies in the witnesses' testimony, the alleged unreliability of the witnesses, and based on the alibi offered at trial, (*see* Doc. 2, pp. 5, 7; Doc. 16, pp. 9-12), it is not the province of this court to reweigh the evidence on habeas review.   *See Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (noting that a habeas court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court").   The Ohio Court

of Appeals' adjudication of petitioner's sufficiency-of-evidence claims involved a reasonable application of the *Jackson* standard and was based on a reasonable determination of the facts in light of the evidence presented at trial.   Accordingly, the undersigned concludes that petitioner is not entitled to relief based on the claims raised in Grounds One and Three of the petition challenging the sufficiency of the evidence supporting his convictions.

      **B.  Grounds Two and Four are not cognizable in federal habeas corpus.**

In Ground Two, petitioner contends that his conviction was against the manifest weight of the evidence, arguing that the jury "lost its way" in finding him guilty.   (Doc. 2, p. 6).   In Ground Four, he contends that his sentence was excessive in light of his having no criminal history and because he claims the evidence did not support his convictions.   *Id.* at 9.   Petitioner is not entitled to habeas relief based on these claims because neither ground for relief is cognizable in federal habeas corpus.

A "manifest weight of evidence" claim, which is based on a state law concept that is "both quantitatively and qualitatively different" from a constitutional due process sufficiency of evidence standard, *see Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982), and *State v. Thompkins*, 678 N.E.2d 541, 546 (1997), *superseded by state constitutional amendment on other grounds in State v. Smith*, 684 N.E.2d 668 (1997), raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding such as this.   *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984).

The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt.   *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983).   In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime

13

beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence–as opposed to one based upon insufficient evidence–requires the appellate court to act as a "thirteenth juror" and to review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Martin*, 485 N.E.2d 717, 720 (1st Dist. Ohio 1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982).  "Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court."  *Mason v. Brunsman*, No. 1:07-cv-1020, 2009 WL 2169035, at *29 (July 16, 2009 S.D. Ohio ) (Spiegel, J.; Black, M.J.).  Accordingly, petitioner is not entitled to habeas relief based on his manifest weight of the evidence claim raised in Ground Two.

With regard to his excessive sentence claim in Ground Four, petitioner has not stated a cognizable claim to the extent that he contends that the Ohio trial court abused its discretion under Ohio law.   A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law."  28 U.S.C. § 2254(a); *Pulley,* 465 U.S. at 41; *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").

To the extent that petitioner may be claiming his sentence violates the Eighth Amendment, his sentence does not constitute cruel and unusual punishment because it fell within the statutory

maximum under the Ohio sentencing statute.[4]  *See Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000).   The Constitution does not mandate proportionate sentences, *see Harmelin v. Michigan*, 501 U.S. 957, 965 (1991), and "only an extreme disparity between crime and sentence offends the Eighth Amendment."  *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).   "Federal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole."  *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995) (citing *Solem v. Helm,* 463 U.S. 277 (1983); *Rummel v. Estelle,* 445 U.S. 263 (1980); *United States v. Dumas,* 934 F.2d 1387 (6th Cir. 1990)).   Petitioner's sentence fell within the statutory penalty for aggravated robbery, a felony of the first degree, and did not run afoul of the Eighth Amendment.

Accordingly, petitioner is not entitled to habeas corpus relief based on the claims raised in Grounds Two and Four of the petition.

### C.  Ground Five is without merit.

In Ground Five, petitioner argues that the prosecution committed prosecutorial misconduct based on alleged improper remarks made during closing arguments.   According to petitioner, the prosecutor improperly expressed her personal belief regarding the credibility of defense witnesses and improperly called petitioner, his mother and girlfriend liars without any evidence to support the accusations.   (Doc. 2, Attachment; Doc. 16, pp. 12-14).

Petitioner raised his misconduct claim on direct appeal.   The Ohio Court of Appeals overruled the assignment of error, finding that the prosecutor's comments were supported by the evidence:

---

[4] As the Ohio Court of Appeals found in dismissing petitioner's excessive sentence claim: "The trial court imposed a four-year sentence for the underlying felony, plus three years on a firearm specification, which was mandatory. Aggravated robbery under R.C. 2911.01(A)(1) is a first-degree felony.   The four-year sentence imposed for that offense was within the statutory range for a first-degree felony.   The trial court complied with all other sentencing statutes, and therefore, the sentence was not contrary to law."   (Doc. 6, Ex. 1, p. 4).

In his fifth assignment of error, Chandler contends that the prosecutor made improper statements during closing argument.  He argues that she improperly called two defense witnesses liars.  This assignment of error is not well taken.

Prosecutors are normally entitled to wide latitude in their remarks.  The test for prosecutorial misconduct is (1) whether the remarks were improper, and (2) if so, whether the remarks affected the accused's substantial rights.  The conduct of the prosecuting attorney cannot be grounds for error unless it deprives the defendant of a fair trial.

While prosecutors may not state their personal beliefs regarding guilt and credibility, they may characterize a witness as a liar or a claim as a lie if the evidence reasonably supports that characterization.  In this case, the prosecutor's comments on the witnesses' credibility were based on their demeanor at trial, their motives to lie, and inconsistencies in their testimony.  Her comments were supported by the evidence and did not deprive Chandler of a fair trial.  Consequently, we overrule Chandler's fifth assignment of error.

(Doc. 6, Ex. 1, p. 5).

The scope of federal habeas corpus review of petitioner's prosecutorial misconduct claims is narrow because the federal court does not sit as an appellate court with supervisory power to rectify general trial errors.  *Donnelly v. DeChristoforo,* 416 U.S. 637, 642 (1974).  Although a court confronted with such a claim must first determine whether the challenged conduct was improper, a finding of impropriety is not sufficient in itself to amount to a due process violation.  *See, e.g., Darden v. Wainwright,* 477 U.S. 168, 179-80 (1986).  Rather, "[t]he touchstone of due process analysis in such a case is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips,* 455 U.S. 209, 219 (1982).

To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly*, 416 U.S. at 643.  "Even if the prosecutor's conduct was 'undesirable or even universally condemned,' this Court can only provide relief if the [conduct was]

so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation." *Darden,* 477 U.S. at 181. The reviewing court's focus on a claim of prosecutorial misconduct is "the fairness of the trial, not the culpability of the prosecutor." *Smith,* 455 U.S. at 219. A prosecutor's alleged misconduct must be examined within the context of the entire trial to determine whether it deprived a defendant of a fair trial. *United States v. Young,* 470 U.S. 1, 11-12 (1985). "Reversal is required only if the prosecutor's misconduct is 'so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant.'" *Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006) (quoting *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997)).

The Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id*. at 452. Upon a finding of impropriety, the court then determines if the statements were flagrant. *Id*. The Court considers four factors in determining flagrancy: (1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant. *Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003); *Macias*, 291 F.3d 452. *See also Darden,* 477 U.S. at 182; *Young,* 470 U.S. at 12; *Donnelly*, 416 U.S. at 646-647. Other relevant factors include whether the prosecutor manipulated or misstated the evidence, *see Darden,* 477 U.S. at 182; *Berger v. United States,* 295 U.S. 78, 84-85 (1935), *overruled on other grounds by Stirone v. United States,* 361 U.S. 212 (1960), or whether a curative

17

instruction was given by the trial judge, *see Darden,* 477 U.S. at 182.

In the instant case, the Ohio Court of Appeals decision was neither an unreasonable application of federal law nor based on an unreasonable determination of the facts.   First, the appellate court reasonably concluded that the prosecution's comments were supported by the trial testimony.   With regard to petitioner's mother, the prosecution argued that she was not credible based on her having been convicted of a crime of dishonesty, her lack of eye contact and body language during her testimony, and her incentive to help her son.   (*See* Doc. 6, Transcript pp. 479-82).   Similarly, the prosecution argued that petitioner's girlfriend was not being truthful based on her testimony.   The prosecution pointed to her body language and response to questioning regarding whether petitioner bought her a ring after the date of the robbery.   *Id.* at 483.   The prosecution further argued that she was not credible based on her testimony that she would do anything for petitioner.   *Id.* at 484-85.   Finally, with regard to petitioner, the prosecutor contended that his denial of every aspect of Ms. Walker's testimony suggested he was lying.[5] After review of the record in this case, the undersigned finds that the Court of Appeals' determination that the prosecution's comments on the witnesses' credibility were based on their demeanor at trial, their motives to lie, and inconsistencies in their testimony, was not unreasonable.

Second, even assuming the comments of the prosecutor during closing argument were improper, *Macias,* 291 F.3d at 452, they were not so flagrant as to render the entire trial

---

[5] During closing the prosecution made the following argument: "The defendant's testimony, he couldn't agree with Ms. Walker on anything.   Do you remember I asked him: Do you go to the store on a daily basis?   No, two to three times.   Do you buy Cigarillos there all the time?   Well, no, I buy pop and the other - - oh, wait, Cigarillos too.   Do you go at the same time every day?   No.   I go between 5 and 6.   Well, Ms. Walker said he goes between 5 and 6. He would not agree with her on anything.   And why is that?   Ask yourselves that.   When I asked him, do you refer to her as Auntie?   No. Do you talk to her about that car?   No.   He is lying."   (Doc. 6, Transcript pp. 485-86).

fundamentally unfair.   In this case, the prosecutor's comments occurred during closing argument and petitioner does not contend that the prosecutor acted inappropriately at any other point during the trial.   Because the comments were isolated, this factor does not weigh in petitioner's favor.   *Bowling*, 344 F.3d at 512.   Furthermore, the trial court judge informed the jury on multiple occasions during closing arguments that the attorneys are given wide latitude during closing arguments, that closing arguments are not evidence, and that the issue of credibility is not for the attorneys to vouch for but for the jury to decide.   (*See* Doc. 6, Transcript pp. 442, 482, 485, 494-96).   Based on a review of the entire record, the undersigned finds that the three comments by the prosecution in closing did not mislead the jury, prejudice the defendant or otherwise deprive petitioner of a fair trial.

The Ohio Court of Appeals' determination that the prosecutor's comments in closing argument did not violate petitioner's due process rights was not objectively unreasonable. Petitioner has failed to demonstrate the prosecutor's challenged statements in closing argument deprived him of a fair trial.   Accordingly, petitioner is not entitled to habeas corpus relief based on the prosecutorial misconduct claim alleged in Ground Five of the petition.

**D.  Ground Six is without merit.**

In Ground Six, petitioner claims that his due process rights were violated due to the trial court's failure to hold a proper hearing in response to his allegations of juror and witness misconduct.   (Doc. 16, p. 14).   After the jury returned guilty verdicts, two individuals present during the trial testified that they observed a juror engage in a conversation with a state's witness, Detective Brucato.   (Doc. 16, Transcript pp. 535-41).   Petitioner contends that the trial court should have permitted his attorney to voir dire the juror in question.   (Doc. 16, p. 15).

On direct appeal, petitioner argued that the trial court erred by failing to grant his motion to

set aside the jury verdict in light of the alleged misconduct.   In overruling the assignment of error,

the Ohio Court of Appeals found that the trial court's investigation of the alleged misconduct and

finding that no outside communication occurred was not an abuse of discretion:

> In his sixth assignment of error, Chandler contends that the trial court erred in overruling his motion for a new trial.  He argues that a new trial was justified based on juror and witness misconduct.   This assignment of error is not well taken.
>
> The record shows that Chandler's mother and a family friend claimed that they had seen Detective Brucato talking with a juror outside the courtroom.   Though they claimed that this conversation occurred shortly after the trial began, they did not bring it to the court's attention until after the jury had returned its verdict.
>
> The parties questioned Detective Brucato under oath, and he adamantly denied having any contact with any of the jurors.  He stated, "I had no casual conversation with the jurors at all.   None.   As a matter of fact, on the day in question I believe I did not leave this courtroom."  After he testified, the court denied the motion, despite Chandler's earlier argument that the court should have conducted a voir dire of the jurors.
>
> When a trial court learns of an improper communication with a juror, it must hold a hearing to determine whether the communication biased a juror.   A court will not reverse a judgment because of juror misconduct unless the accused shows prejudice.   Trial courts have broad discretion in dealing with outside contact with jurors and in determining whether to declare a mistrial or to replace an affected juror.
>
> In this case, the trial court held a hearing about the allegations of juror misconduct and found them to be without merit.   It concluded, following Detective Brucato's testimony, that no outside communication had occurred.   Under the circumstances, we cannot hold that the trial court's decision was so arbitrary, unreasonable, or unconscionable as to connote and abuse of discretion.   We overrule Chandler's sixth assignment of error.

(Doc. 6, Ex. 1, pp. 5-6).

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall

enjoy the right to a . . . trial, by an impartial jury."   The right, held applicable to the states through

the Fourteenth Amendment's Due Process Clause, requires that a defendant be provided a fair trial

by a panel of impartial, "indifferent" jurors whose verdict is based on the evidence developed at

trial. *Irvin v. Dowd,* 366 U.S. 717, 722 (1961). *See also Morgan v. Illinois*, 504 U.S. 719, 726

(1992). Jurors are presumed to be impartial. *See Irvin*, 366 U.S. at 723. The right to an

impartial jury does not mandate a new trial every time a juror has been placed in a potentially

compromising situation or require that jurors be totally ignorant of the facts and issues involved as

"it is virtually impossible to shield jurors from every contact or influence that might theoretically

affect their vote." *Smith v. Phillips,* 455 U.S. 209, 217 (1982); *see also Murphy v. Florida,* 421

U.S. 794, 800 (1975). The constitutional requirement of impartiality is satisfied if the jury is

"capable and willing to decide the case solely on the evidence before it." *Smith,* 455 U.S. at 217.

In federal habeas corpus review, the trial judge's determination of a jury's impartiality is a finding

of fact subject to special deference absent clear and convincing evidence otherwise. *Patton v.*

*Yount,* 467 U.S. 1025, 1031, 1038 (1984); *Bowling v. Parker*, 344 F.3d 487, 519 (6th Cir. 2003).

The Supreme Court has held that when confronted with an allegation of juror misconduct

or bias, a trial court "should determine the circumstances, the impact upon the juror, and whether

or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Remmer*

*v. United States*, 347 U.S. 227, 230 (1954); *see also Smith*, 455 U.S. at 215. However, a trial court

is only required to investigate the effect of the misconduct when "there is a credible allegation of

extraneous influences." *See United States v. Rigsby,* 45 F.3d 120, 124-25 (6th Cir. 1995); *see also*

*Tracey v. Palmateer*, 341 F.3d 1037, 1044 (9th Cir. 2003) (finding that Supreme Court precedent

does not require an evidentiary hearing upon every allegation of juror misconduct, "[r]ather in

determining whether a hearing must be held, the court must consider the content of the allegations,

the seriousness of the alleged misconduct or bias, and the credibility of the source"). In other

21

words, "*Remmer* and *Smith* do not stand for the proposition that *any time* evidence of juror bias comes to light, due process requires the trial court to question the jurors alleged to have bias." *Tracey*, 341 F.3d at 1044.   "[T]o to be entitled to a post-trial hearing a defendant must 'come[ ] forward with clear, strong, substantial and incontrovertible evidence that a specific, non-speculative impropriety has occurred.'"   *Kowalak v. Scutt*, 712 F.Supp.2d 657, 692 (E.D. Mich. 2010) (quoting *United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989)).

As noted by the Ohio appellate court in this case, the trial judge conducted a hearing after petitioner's mother and a family friend alleged that they witnessed a juror engage in a conversation with Detective Brucato.   At defense counsel's request, the trial court had both individuals speak on the record and describe what they observed.   (*See* Doc. 6, Transcript pp. 533-46).   Both defense counsel and the trial judge asked questions of the individuals.   The prosecution was heard also, noting that the individuals did not bring up the alleged misconduct until after the verdict, despite claiming to have seen the interaction shortly after the trial began.   *Id.* at 547.   In addition the trial judge permitted both sides to question Detective Brucato, who stated that he never spoke to the juror in question.   *Id.* at 548.

After review of the record in this case, the undersigned finds that the Ohio Court of Appeals' decision was not an unreasonable application of Supreme Court precedent.   The record demonstrates that the trial court judge adequately investigated the allegations and permitted both sides to be heard.   The judge reasonably determined that the allegations of juror misconduct were without merit in light of the timing of the allegations and based on Detective Brucato's testimony that he never conversed with the juror.   *See United States v. Gaitan-Acevedo*, 148 F.3d 577, 590 (6th Cir. 1998) ("It is well established that the trial judge is in the best position to determine the

22

nature of the alleged jury misconduct, and the appropriate remedies for any demonstrated misconduct.") (citation and internal quotation marks omitted).   Although the trial court denied petitioner's request "that the jury be questioned with regard to any contact with Officer Brucato or any other member of the prosecution team," (Doc. 6, Transcript p. 546), petitioner was not deprived of his right to a fair trial because the trial court reasonably found that no external juror contact occurred.[6]   Therefore, petitioner has failed to demonstrate that the Ohio Court of Appeals' decision was an unreasonable application of Supreme Court precedent.   Accordingly, petitioner is not entitled to relief based on Ground Six of the petition.

**E.  Ground Seven is without merit.**

In Ground Seven, petitioner contends that he was deprived of his right to a fair trial and due process of the law based on the trial court's failure to suppress identification testimony.   In his petition and reply to the return of writ, petitioner contends that identification evidence was unduly suggestive based on the fact that the primary identification witness, Cassandra Walker, was not shown a lineup until she was subpoenaed to the grand jury.   (Doc. 16, p. 6).   According to petitioner, it "was obvious that the police had already decided up on a suspect" at that point and that "it is clear that Ms. Walker identified the second person she gave to the police as the perpetrator- male, black Mario Chandler, the individual who came into the store five days after the fact to legally purchase food items – not the male, which who entered the store on the day in question and robbed Ms. Walker at gun point."   *Id.* at 7.   Petitioner further contends that the

---

[6] Petitioner has cited *United States v. Walker*, 1 F.3d 423, 431 (6th Cir. 1993), for the proposition that a trial court's refusal to pose reasonable questions proffered by the defendant to the jury has been held to deprive the defendant of his opportunity to demonstrate actual juror bias.   (*See* Doc. 16, pp. 15-16).   However, *Walker* is distinguishable because it was determined in that case that there was in fact unauthorized contact with the jury.   There, the court found that jurors were inadvertently exposed to transcripts containing inadmissible evidence during deliberations.   *See Walker*, 1 F.3d at 426-27.   As noted above, in this case the trial court determined that the allegations of juror misconduct were without merit.

identification evidence should have been suppressed based on alleged inconsistencies in the

identifying witnesses' testimony.   (*See* Doc. 2, CM/ECF p. 7; Doc. 16, p. 7).

     The Ohio Court of Appeals addressed petitioner's due process claim on the merits, finding

that the procedures used in obtaining the pretrial identifications were not unduly suggestive or

unreliable:

> In the seventh assignment of error, Chandler contends that the trial court erred in
> overruling his motion to suppress identification evidence.  He argues that the
> identifications resulted from unduly suggestive police techniques and that they
> were not reliable.   This assignment of error is not well taken.
>
> A trial court should suppress a pretrial identification of a suspect if the
> confrontation was unnecessarily suggestive of the defendant's guilt, and if the
> identification was unreliable under the circumstances.   The defendant bears the
> burden of proving both prongs of this test. Suggestive identification procedures are
> unreliable if they create a substantial likelihood of misidentification.   "The most
> overtly suggestive process might not be grounds for suppression where the witness
> had more than ample opportunity to view the suspect, or perhaps already knew the
> suspect, or had given a prior description that clearly matched the suspect, and was
> certain in his or her identification."
>
> Nothing in the record suggests that the procedure used was unduly suggestive.
> Detective Brucato followed the police department's procedures for photographic
> lineups.  Further, both Walker and Jackson had ample opportunity to observe
> Chandler when he robbed the store.   Both also knew him and his voice, if not his
> name, from his daily visits to the store, and they recognized him when he returned
> to the store the Sunday following the robbery.   Neither of them hesitated to
> identify Chandler.
>
> Under the circumstances, we cannot hold that either Walker or Jackson's
> identifications was unreliable.   The trial court did not err in overruling Chandler's
> motion to suppress.   Consequently, we overrule his seventh assignment of error
> and affirm his conviction.

(Doc. 6, Ex. 1, pp. 7-8).

     A conviction based on identification testimony that follows a pretrial identification

violates due process when "the pretrial identification procedure is so 'impermissively suggestive

as to give rise to a very substantial likelihood of irreparable misidentification.'"   *Ledbetter v.*

*Edwards,* 35 F.3d 1062, 1070 (6th Cir. 1994) (quoting *Thigpen v. Cory,* 804 F.2d 893, 895 (6th Cir. 1986)) (in turn quoting *Simmons v. United States,* 390 U.S. 377, 384 (1968)). It is the likelihood of misidentification which violates the defendant's due process right. *Neil v. Biggers,* 409 U.S. 188, 198 (1972). *See also Mills v. Cason*, 572 F.3d 246, 251 (6th Cir. 2009). The due process standard is premised on the concern that the trustworthiness of an eyewitness's identification can be easily undermined by improper police suggestion in circumstances where there already is a danger of misidentification because the witness is called upon to identify a stranger observed only briefly, under poor conditions, at a time of extreme emotional stress and excitement. *See Manson v. Brathwaite,* 432 U.S. 98, 112 (1977); *Simmons,* 390 U.S. at 383-84; *United States v. Russell,* 532 F.2d 1063, 1066 (6th Cir. 1976). Therefore, the determination of whether the eyewitness's identification testimony is admissible at trial turns on the reliability of that testimony. *Manson,* 432 U.S. at 114; *see also Summitt v. Bordenkircher,* 608 F.2d 247, 251 (6th Cir. 1979), *aff'd sub nom. Watkins v. Sowders,* 449 U.S. 341 (1981).

The Court must engage in a two-step analysis in deciding whether the accused's right to due process has been violated through the use of a pretrial identification procedure. *Mills*, 572 F.3d at 251. The Court must first consider whether the procedure was unduly suggestive. *Id.* (citing *Ledbetter,* 35 F.3d at 1070-71). "[D]ue process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, __ U.S. __, 132 S.Ct. 716, 724 (2012) (citing *Manson*, 432 U.S. at 107). The defendant bears the burden of proving this element. *Ledbetter,* 35 F.3d at 1071 (citing *United States v. Hill,* 967 F.2d 226, 230 (6th Cir. 1992)). If the Court finds that the procedure was unduly suggestive, it must next evaluate the "totality of the circumstances" to determine whether the trial

25

identification was nevertheless reliable.  *Id.*; *see also Neil,* 409 U.S. at 199-200.   The factors to be considered in assessing the reliability of the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when identifying the defendant; and (5) the length of time between the crime and the identification.  *Manson,* 432 U.S. at 114; *Neil,* 409 U.S. at 199-200; *United States v. Gatewood,* 230 F.3d 186, 193 (6th Cir. 2000); *Ledbetter,* 35 F.3d at 1071.

Here, petitioner does not contend that the Ohio court of appeals used a standard of law contrary to established Federal law, as determined by the Supreme Court.   Instead, petitioner maintains that the Ohio court unreasonably applied controlling federal law to his case.   This Court is mindful that a state court's adjudication is not "unreasonable" "simply because [a federal habeas court] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Williams*, 529 U.S. at 411.   Petitioner must show that the state court's application of the above cited Supreme Court precedent was objectively unreasonable.  *Bell*, 535 U.S. at 694.

Petitioner has failed to make such a showing in this case.   The record supports the Ohio Court of Appeals' determination that the lineup procedures employed by Detective Brucato were not unduly suggestive.   Brucato testified that the photo arrays were arranged by the Bureau of Investigation and that both witnesses read and signed the Cincinnati Police Department Witness Preparation Form, which informed the witnesses, amongst other things, that the array may or may not include the photograph of the person who committed the crime being investigated and that the police will continue to investigate the incident regardless of whether the witness makes an

identification.   (Doc. 6, Transcript pp. 12-13, 15-16, 256-57).   After picking petitioner out of the photo lineup both witnesses indicated that they were confident that he was the individual who committed the robbery, with both witnesses stating they were one hundred percent sure.   *Id.* at 14, 16, 222.   The witness also testified that the police in no way recommended that they pick out a specific individual or otherwise influenced their identification.   *Id.* at 33, 45.

The Court finds petitioner has failed to carry his initial burden of demonstrating that the photographic identification was impermissibly suggestive.   *See* 28 U.S.C. § 2254(e)(1). Therefore, the Court need not assess whether the witness identification was reliable under the totality of the circumstances.   *United States v. Stamper*, 91 F. App'x 445, 462 (6th Cir. 2004). To the extent that plaintiff has argued that inconsistencies in the witnesses' testimony support a finding that the identification procedures were unduly suggestive (*see* Doc. 2; Doc. 16, p. 7), his argument is without merit.   *See Howard v. Warden*, No. 12-3242, 2013 WL 1136557, at *8 (6th Cir. 2013) (noting that the Supreme Court has "made clear that the general reliability of an identification is not a reason to exclude it unless the procedure used to procure the identification is first proven to be unduly suggestive due to police misconduct").

Upon review of the record, this Court concludes that the Ohio Court of Appeals' rejection of petitioner's challenge to the pretrial identification was based on a reasonable assessment of the facts in light of the record evidence and was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Accordingly, petitioner is not entitled to habeas corpus relief with respect to his seventh ground for relief.

Accordingly, in sum, petitioner is not entitled to habeas relief.   Having found that

Grounds One, Three, Five, Six and Seven are without merit and Grounds Two and Four are not cognizable in federal habeas corpus, it is recommended that petitioner's petition for a writ of habeas corpus be **DENIED** with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1.   Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 2) be **DENIED** with prejudice.

2.   A certificate of appealability should not issue with respect to the grounds for relief set forth in the petition, which were addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further."  *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (*citing Barefoot v. Estelle*, 463 U.S. 880, 893 & n. 4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R.App. P. 22(b).

3.   With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.   *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


    *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MARIO CHANDLER,                         Case No. 1:12-cv-078
      Petitioner,

                                  Dlott, J.
      vs.                         Bowman, M.J.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,
      Respondent.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.    This period may be extended further by the Court on timely motion for an extension.   Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

29